1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ALBERT JURADO,

11           Plaintiff,                        No. CIV S-11-1489 CMK (TEMP)

12       vs.

13   COMMISSIONER OF SOCIAL
     SECURITY,

14
             Defendant.                        MEMORANDUM OPINION AND ORDER

15
                                      /

16
                Plaintiff, who is proceeding with retained counsel, brings this action for judicial

17
     review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

18
     Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

19
     judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c).  Pending

20
     before the court are plaintiff's motion for summary judgment (Doc. 17) and defendant's cross-

21
     motion for summary judgment (Doc. 20).  For the reasons discussed below, the court will grant

22
     plaintiff's motion for summary judgment or remand and deny the Commissioner's cross-motion

23
     for summary judgment.

24

25

26

                                               1

# I.  PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits on February 4, 2008 alleging an onset of disability on January 1, 1997 due to physical and mental impairments.  Certified administrative record ("CAR") 13, 93, 100, 132.  Specifically, plaintiff claims disability due to compression fractures in his spine, left hip, and leg, Graves disease, diabetes, retinopathy, hepatitis C, asthma, high blood pressure, depression and difficulties controlling anger.  CAR 32-37, 138.  Plaintiff's claim was denied initially and upon reconsideration.  Plaintiff requested an administrative hearing, which was held on September 1, 2009, before Administrative Law Judge ("ALJ") Sandra K. Rogers.  In a January 20, 2010 decision, the ALJ concluded that plaintiff is not disabled[2] based on the following findings:

---

[1]  Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not

1.    The claimant meets the insured status requirements of the Social Security Act though June 30, 1998.

2.    The claimant has not engaged in substantial gainful activity since January 1, 1997, the alleged onset date.

3.    The claimant has the following severe impairments, which are severe when considered in combination:  a history of a hip/femur fracture with surgical repair, a back impairment, diabetes with possible neuropathy, hepatitis C, obesity , a hypothyroid condition, asthma, an adjustment disorder, a history of methamphetamine abuse, and a mixed personality disorder.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) that does not involve contact with the public.

6.    The claimant is unable to perform any past relevant work.

7.    The claimant was born on June 19, 1969 and was 27 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.    The claimant has at least a high school education and is able to communicate in English.

9.    Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.    The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 1997 through the date of this decision.

---

disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

3

1  CAR 15-22 (citations to C.F.R. omitted).  After the Appeals Council declined review on March

2  30, 2011, this appeal followed.

## II.  STANDARD OF REVIEW

4          The court reviews the Commissioner's final decision to determine whether it is:

5  (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

6  whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

7  more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

8  (9th Cir. 1996).  It is "such evidence as a reasonable mind might accept as adequate to support a

9  conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including

10  both the evidence that supports and detracts from the Commissioner's conclusion, must be

11  considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v.

12  Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

13  decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

14  Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

15  findings, or if there is conflicting evidence supporting a particular finding, the finding of the

16  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

17  Therefore, where the evidence is susceptible to more than one rational interpretation, one of

18  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

19  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

20  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

21  Cir. 1988).

## III.  DISCUSSION

23          Plaintiff argues the ALJ erred by improperly discounting record medical opinions

24  and improperly relying on the grids to find plaintiff not disabled.

25  /////

26  /////

4

## A.    MEDICAL OPINIONS

Plaintiff contends the ALJ improperly rejected the opinions of Dr. Daigle, an examining psychiatrist, Dr. Tashjian, a state agency psychiatrist, and Dr. Abatecola, plaintiff's treating primary care physician.[3]  The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

---

[3]  As discussed below, the ALJ's error with respect to record psychiatric opinions requires remand of this matter.  With respect to plaintiff's treating physician, the ALJ's rejection of that opinion of the basis that plaintiff's condition was not "permanent and stationary" and that it did not represent plaintiff's condition for the durational requirement of twelve months is not supported by substantial evidence.  CAR 19, 285-288.  Dr. Abatecola's assessment is dated September 15, 2009; he initially saw plaintiff on September 8, 2008 and although the last time Dr. Abatecola specifically treated plaintiff was July 17, 2009, the medical records from Dr. Abatecola's clinic, which were presumably available to the doctor, extend through September, 2009.  CAR 310.

1  rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

2  81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

3  the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

4  finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

5  legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

6  professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

7  without other evidence, is insufficient to reject the opinion of a treating or examining

8  professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

9  conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

10 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

11 see also Magallanes, 881 F.2d at 751.

12          Dr. Daigle examined plaintiff on July 2, 2008, provided a narrative report, and

13 assessed plaintiff's mental residual functional capacity.  CAR 235-240.  Dr. Daigle's diagnoses

14 included adjustment disorder, mixed personality disorder, and severe psychosocial stressors.

15 CAR 239.  With respect to plaintiff's ability to adjust to a job, Dr. Daigle assessed plaintiff as

16 being moderately to markedly limited in the ability to relate and interact with supervisors, co-

17 workers and the public and in the ability to adapt to the stresses common to a normal work

18 environment and moderately limited in the ability to maintain concentration and attention,

19 persistence and pace and in the ability to associate with day-to-day work activity.  CAR 240.  Dr.

20 Daigle concluded plaintiff might be able to hold down a part-time low stress job where he would

21 not have to interact very much with the public.  Id.  The ALJ rejected Dr. Will's opinion on the

22 grounds that plaintiff had "only occasional intermittent symptoms," that plaintiff's medications

23 helped with his anxiety, and that Dr. Daigle gave too much weight to plaintiff's subjective

24 reports.  CAR 20.  The reasons set forth by the ALJ for rejecting Dr. Daigle's opinion do not

25 meet the standards set forth above.

26 /////

6

1          Although the Commissioner advances several arguments in support of the ALJ's

2   conclusion, the ALJ's decision must stand or fall on the reasons set forth by the ALJ.  This court

3   reviews the adequacy of the reasons specified by the ALJ, not the post hoc rationalizations of the

4   agency.  See Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991); see also Connett v.

5   Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (court is constrained to review the reasons the ALJ

6   asserts).  The ALJ discounted Dr. Daigle's opinion on the basis that plaintiff experienced only

7   intermittent symptoms; however, the records from plaintiff's mental health treatment while on

8   parole are replete with indicators of active and continuous psychiatric problems.  See, e.g. CAR

9   296 (3/5/09--"very passive-aggressive demeanor.  High risk for violence." 2/19/09--"passive,

10  stoic, nonmotivated"), 297 (2/5/09--"'People freak me out.' [Plaintiff] doesn't socialize but tends

11  to isolate." 8/17/09-- plaintiff does not "do well in unfamiliar surroundings.")  There are also

12  numerous entries in the medical records indicating fluctuations in the efficacy of the medications

13  prescribed for plaintiff's mental condition.  See, e.g. CAR 294 (4/17/09 "celexa appears to make

14  no difference"), CAR 296 (3/5/09--"celexa does not appear to be making any difference,"

15  2/19/09--"doesn't see any difference with his medications"), 300 (5/27/09--"can't comment on

16  whether [celexa] is really doing anything for him"), 303 ("2/19/09--takes celexa with no

17  experienced benefit"); cf. CAR 294 (5/4/09--"celexa is helping with anxiety symptoms"), CAR

18  297 (2/5/09--"celexa is helping with anxiety"), CAR 281 (treating psychiatrist noted plaintiff's

19  response to treatment was only "partial").  The ALJ also rejected Dr. Daigle's opinion as having

20  accorded too much weight to plaintiff's subjective symptoms.  However, Dr. Daigle's opinion is

21  well supported with his own objective findings based on a complete mental status examination.

22  See CAR 237 (plaintiff "moved in a catlike fashion, somewhat tense and obviously vigilant ...

23  slightly defensive, fretful and humorless throughout), CAR 238 ("mood was anxious and

24  depressed.  Affect was tense and he was vigilant and seemed defensive . . . expressed

25  philosophical suicidal rumination.")  On this record, the ALJ's reasons for discounting Dr.

26  Daigle's opinion are not supported by substantial evidence in the record as a whole.

1          Plaintiff also challenges the ALJ's partial rejection of the limitations assessed by

2  the state agency psychiatrist, Dr. Tashjian.  CAR 20, 252-253.  Although the ALJ purportedly

3  accepted Dr. Tashjian's conclusions regarding moderate restrictions in social functioning, the

4  ALJ adopted only the finding of moderate restriction in contact with the public, and made no

5  mention in the residual functional capacity finding of Dr. Tashjian's moderate restriction in the

6  ability to get along with coworkers or peers without distracting them or exhibiting behavioral

7  extremes.  CAR 17, 253.  There being no explanation for this omission, the ALJ's rejection of

8  this limitation cannot be sustained.  In addition, the ALJ rejected Dr. Tashjian's opinion that

9  plaintiff has moderate limitations in concentration, persistence and pace as inconsistent with the

10  psychiatric evaluation or the treatment records.  CAR 20.  Inasmuch as the record opinion of the

11  psychiatric evaluator, Dr. Daigle (CAR 240), agreed with Dr. Tashjian's assessment and the ALJ

12  failed to articulate what treatment records were inconsistent, the reasons given for rejecting Dr.

13  Tashjian's opinion are not specific and legitimate.  CAR 240.

14          **B.  GRIDS**

15          Finally, plaintiff contends the ALJ improperly relied on the grids and improperly

16  rejected the testimony of a vocational expert.  The Medical-Vocational The Medical-Vocational

17  Guidelines ("the grids") are in table form.  The tables present various combinations of factors the

18  ALJ must consider in determining whether other work is available.  See generally Desrosiers,

19  846 F.2d at 577-78 (Pregerson, J., concurring). The factors include residual functional capacity,

20  age, education, and work experience.  For each combination, the grids direct a finding of either

21  "disabled" or "not disabled."

22          There are limits on using the grids, an administrative tool to resolve individual

23  claims that fall into standardized patterns:  "[T]he ALJ may apply [the grids] in lieu of taking the

24  testimony of a vocational expert only when the grids accurately and completely describe the

25  claimant's abilities and limitations."  Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see

26  also Heckler v. Campbell, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983).  The ALJ

1    may rely on the grids, however, even when a claimant has combined exertional and nonexertional

2    limitations, if nonexertional limitations are not so significant as to impact the claimant's

3    exertional capabilities.[4]  Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on

4    other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny v. Bowen, 864

5    F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983)

6    (requiring significant limitation on exertional capabilities in order to depart from the grids).

7            In this case, the ALJ posed hypotheticals to a vocational expert based on the

8    residual functional capacity assessments of Dr. Daigle, the examining psychiatrist, and Dr.

9    Tashjian, the state agency psychiatrist, CAR 41-43, 240, 249, 252-253.  When all of the

10    limitations assessed by these physicians were included in the hypotheticals, the vocational expert

11    testified that there would be no jobs available to plaintiff.  CAR 41-43.  Despite this testimony,

12    the ALJ found that plaintiff was not disabled, relying on the grids in doing so.  The ALJ did not

13    discuss the vocational expert's testimony.  In light of the failure of the ALJ to set forth specific

14    and legitimate reasons for discrediting the opinions of Drs. Daigle and Tashjian, it was error for

15    the ALJ to rely on the grids instead of the vocational expert testimony.  See Jones v. Heckler, 760

16    F.2d 993, 998 (9th Cir. 1985); see also, e.g. Rallo v. Bowen, 700 F.Supp. 413 (N.D. Ill. 1988)

17    (remand for reconsideration by ALJ of substantial vocational evidence in support of disability

18    claim where ALJ relied solely on grids but vocational experts opined plaintiff was not qualified

19    for any jobs and could not perform even basic sedentary work).

20    /////

21

22       [4] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b) (2003); SSR 83-10, Glossary; compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).

23       Non-exertional activities include mental, sensory, postural, manipulative and environmental matters that do not directly affect the primary strength activities. 20 C.F.R. §

24    416.969a (c) (2003); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)).  "If a claimant has an impairment that limits his or her ability

25    to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." Penny v. Sullivan, 2 F.3d

26    953, 958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

The remaining question is whether to remand this case to the ALJ or to order the payment of benefits. "The decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court." Stone v. Heckler, 761 F.2d 530, 533 (9th Cir. 1985); see also Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). Although the record medical opinions were improperly rejected by the ALJ, the examining psychiatrist was not provided plaintiff's psychiatric records and the state agency psychiatrist did not have plaintiff's later psychiatric records. CAR 235 (no records provided to Dr. Daigle); CAR 254 (state agency assessment dated July 22, 2008); CAR 290-309 (parole outpatient records dated December 15, 2008 to September 21, 2009). Under these circumstances, remand for further evaluation of the record by a consultative psychiatrist appears appropriate. On remand, the ALJ must either properly discount the nonexertional impairments assessed by the examining and state agency physicians, or obtain the testimony of a vocational expert and include in the hypotheticals the limitations assessed which are not properly rejected. In addition, if the ALJ rejects the testimony of the vocational expert, the ALJ must explicitly articulate reasons for rejecting the vocational expert testimony.

## IV. CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 17) is granted;

2. Defendant's cross-motion for summary judgment (Doc. 20) is denied;

/////

/////

/////

/////

10

1    3.  This matter is remanded for further proceedings consistent with this order; and

2    4.  The Clerk of the Court is directed to enter judgment and close this file.

3

4    DATED:  April 30, 2012

5                                                    _____

6                                                    **CRAIG M. KELLISON**
                                                     UNITED STATES MAGISTRATE JUDGE

7

8
     JMM
9    jurado.ss.cmk

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

11